## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| PETE GONZALES, | § | |
|             Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:09-4054 |
| | § | |
| AUTOZONERS, LLC, et al, | § | |
|             Defendants. | § | |

## MEMORANDUM AND ORDER

In this ERISA case, Defendants have filed a Motion for Summary Judgment [Doc. # 136] ("Motion"), to which Plaintiff has responded in multiple filings.[1] Defendants have filed a reply [Doc. # 150], which includes a motion to strike untimely filed documents and reurges a running motion for sanctions against Plaintiff's counsel. In addition, Defendants have filed a Motion to Exclude Plaintiff's Experts [Doc. # 139], and Plaintiff has responded [Doc. # 146]. Finally, Defendants have filed a Motion to Dismiss Specific Defendants [Doc. # 140], to which Plaintiff has not

---

[1] On February 6, 2012, which was the filing deadline set by the Court, *see* Order [Doc. # 144], Plaintiff filed a Response in Opposition to Defendants' Motion for Summary Judgment [Doc. # 145] ("Response") and a document entitled Plaintiff's Objections to Defendants' Motion for Summary Judgment Evidence [Doc. # 147]. On February 7, 2012, at 12:26 a.m., Plaintiff filed a document entitled Plaintiff Pete Gonzales's Objections and Responses to Defendants' Statement of Uncontroverted Facts [Doc. # 148]. On February 8, 2012, Plaintiff filed a document entitled Supplemental Declaration of David J. Van Susteren Attaching and Authenticating Certain Documents Referenced by Plaintiff in the Objections to Summary Judgment Evidence [Doc. # 149].

responded. The motions are ripe for decision.  Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that Defendants' summary judgment motion should be **granted**.

## I.      BACKGROUND

Plaintiff Pete Gonzales was employed by AutoZone as a Parts Service Manager beginning in December 2005.  He states that, while working at an AutoZone store in Houston on December 17, 2007, he slipped on a puddle of oil but did not fall.  He claims that, as a result of the slip, he twisted his back and ankle and has incurred more than $100,000 in medical bills.   He further claims that he informed his employer of the incident on December 17, 2007, both verbally and in writing.

As a Texas employee of AutoZone, Plaintiff was covered by the AZTEK Advantage AutoZone Texas Occupational Injury Benefit Plan ("the Plan,") which is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*

Plaintiff applied for benefits under the Plan.  On January 28, 2008, Defendant Sedgwick Claims Management Inc. ("Sedgwick"), the company that administered and adjusted Plaintiff's claim, sent Plaintiff a letter denying his claim on two grounds: first, Plaintiff had not reported his injury within 24 hours as required by the Plan; and

second, Plaintiff had not sought medical treatment with an approved provider under the Plan.[2]

Plaintiff appealed the denial of benefits.  On September 2, 2008, the Appeals Committee for the Plan affirmed the denial on the ground that Plaintiff's appeal had not been timely filed.[3]

Plaintiff filed this suit on December 18, 2009, and has been ordered to replead several times.  His Fourth Amended Complaint [Doc. # 83-1], filed on March 14, 2011, is the live pleading.  On June 16, 2011, the Court issued a Memorandum and Order [Doc. # 114], dismissing Plaintiff's claim for equitable relief under ERISA (Count III of the Fourth Amended Complaint) by Plaintiff's agreement.  In the same order, the Court granted Defendants' motion to compel arbitration of Plaintiff's claims for non-subscriber liability and premises liability (Courts V and VI of the Fourth Amended Complaint).

The claims currently pending before this Court are Plaintiff's claims for benefits under ERISA (Count I), declaratory judgment (Count II), and attorneys' fees (Count IV).

---

[2]     Letter from J. Emerson to P. Gonzales, dated Jan. 28, 2008 (Exhibit C to Motion) ("Denial Letter").  The letter was authored by Claims Examiner Justin Emerson.

[3]     Letter from S. Buessink to P. Gonzales, dated Sept. 2, 2008 (Exhibit M to Motion); Appeals Committee Meeting Minutes, dated Sept. 2, 2008 (Exhibit S to Reply).

## II.    PRELIMINARY MATTERS

The Court first addresses several non-dispositive motions filed by the parties.

### A.    Motion to Dismiss Specific Defendants

Defendants have filed a Motion to Dismiss Specific Defendants [Doc. # 140] urging that AZer Texas, LLC, and AutoZone Texas, LP, each should be dismissed. Plaintiff has filed no opposition.  In Plaintiff's Fourth Amended Complaint, the only claims brought against AZer Texas, LLC, and AutoZone Texas, LP, are Counts V (non-subscriber liability) and VI (premises liability), both of which have been compelled to arbitration by this Court.[4]  The motion therefore is meritorious and will be granted.  The remaining Defendants in this action are AutoZoners, LLC; the Plan; and Sedgwick Claims Management Services, Inc.[5]

### B.    Motion to Strike Untimely Filed Documents and to Sanction Plaintiff's Counsel

Defendants' Reply contains a "Motion to Strike Untimely Filed Documents and Sanction Plaintiff's Counsel," requesting that the Court strike as untimely filed two

---

[4]      Memorandum and Order, dated June 16, 2011 [Doc. # 114].

[5]      Although the Fourth Amended Complaint also alleges claims against AutoZone, Inc., the Court previously dismissed all claims against that Defendant. *See* Order, dated April 29, 2011 [Doc. # 103].

documents filed by Plaintiff in conjunction with his summary judgment response.[6]
Plaintiff has not responded.

On January 26, 2012, this Court granted Plaintiff's counsel an extension of time
for summary judgment briefing.[7]  The Court permitted Plaintiff's counsel an extension
until February 6, 2012, despite the fact that Plaintiff had provided scant information
justifying his request for an extension.   The Court further warned that no further
extensions would be granted, and that Plaintiff's filings must comply with Federal
Rule of Civil Procedure 11(b).[8]

On February 6, 2012, the deadline set by the Court, Plaintiff filed his Response
[Doc. # 145] and a document entitled "Objections to Motion For Summary Judgment
Evidence" [Doc. # 147].[9]   On February 7, 2012, at 12:26 a.m., Plaintiff filed
"Objections and Responses to Defendants' Statement of Uncontroverted Facts" [Doc.
# 148].  On February 8, 2012, Plaintiff filed a "Supplemental Declaration of David J.
Van Susteren Attaching and Authenticating Certain Documents Referenced by

---

[6]     Reply [Doc. # 150], at 3-5 (moving Court to strike Documents No.  148 and 149).

[7]     Order [Doc. # 144].

[8]     *Id*. at 2-3.

[9]     Plaintiff also filed a response to Defendants' Motion to Exclude Plaintiff's Experts
       [Doc. # 146] on February 6, 2012.

Plaintiff" in the Objections to Defendants' Summary Judgment Evidence [Doc. # 149].

The two documents Defendants move to strike were filed untimely and with no request for the Court's leave, despite the Court's previous Order and Rule 11 warning.[10]   Defendants may file, on or before **April 10, 2012**, a memorandum in support of their running motion to sanction Plaintiff's counsel, and may address counsel's conduct in litigating the summary judgment motion as well as all other relevant conduct during litigation of this case.

In an abundance of caution, and to ensure that Plaintiff is not unfairly prejudiced by his counsel's conduct, the Court declines to strike Documents No. 148 and 149 as untimely and has reviewed and considered both documents.

### C.   Plaintiff's Objections to Defendants' Summary Judgment Filings

Plaintiff has raised multiple objections to Defendants' summary judgment evidence and to statements made in Defendants' briefing.[11]

---

[10]   Despite this Court's Order of January 26, Plaintiff's counsel stated that he was "unaware of any federal or local rule by which objections (or referenced documents or exhibits therein) to a movant's summary judgment evidence are obligated to be filed on or before the summary judgment response due date."  Doc. # 149, at 1.

[11]   *See* Plaintiff's Objections to Defendants' Summary Judgment Evidence [Doc. # 147]; Objections and Responses to Defendants' Statement of Uncontroverted Facts [Doc. # 148]; Supplemental Declaration of David J. Van Susteren Attaching and Authenticating Certain Documents Referenced by Plaintiff in the Objections to Defendants' Summary Judgment Evidence [Doc. # 149].

Many objections raised by Plaintiff's counsel are immaterial because they pertain to statements or evidence upon which the Court does not rely for any rulings.[12] For the documents upon which the Court does rely, Plaintiff's objections will be discussed and ruled upon in the course of the Court's analysis herein. Those objections not specifically addressed by the Court are overruled or moot.

## III.   MOTION FOR SUMMARY JUDGMENT

Defendants seek summary judgment on all three of Plaintiff's remaining claims: a claim for benefits under ERISA § 502(a)(1), 29 U.S.C. § 1132(a)(1); a claim for declaratory judgment; and a claim for attorneys' fees under 29 U.S.C. § 1132(g).

### A.   Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.[13] "The court shall

---

[12]   In addition, many of Plaintiff's objections in Document # 148 are simply objections to Defendants' characterization of certain facts as "undisputed." The Court has not accepted Defendants' representation of which facts are disputed, but rather has considered all evidence presented by both sides when determining whether or not a genuine issue of material fact exists on each issue before the Court.

[13]   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).

grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[14]

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."[15]  The moving party, however, need not negate the elements of the non-movant's case.[16]  The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case."[17]

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.[18]  "An issue is material if its resolution could affect the outcome of the action.   A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[19]

---

[14]   FED. R. CIV. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

[15]   *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

[16]   *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

[17]   *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (internal citations and quotations omitted).

[18]   *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).

[19]   *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party.[20]  However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'"[21]  The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings.[22]  Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden.[23]  Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case."[24]  In the absence of any proof,

---

[20]   *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).

[21]   *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999)).

[22]   *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002), *overruled on other grounds*, *Grand Isle Shipyards, Inc., v. Seacor Marine*, *LLC*, 589 F.3d 778 (5th Cir.2009).

[23]   *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).

[24]   *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted).

the court will not assume that the non-movant could or would prove the necessary facts.[25]

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence.[26]   A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary.[27]

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court. Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."[28]

---

[25]   *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

[26]   *See* FED. R. CIV. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"); *Love v. Nat'l Medical Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).

[27]   *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

[28]   *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (internal citations and quotations omitted).

**B.    Claim under ERISA Section 502(a)(1)**

Plaintiff alleges in his Fourth Amended Complaint that Defendants violated

ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), when they denied his claim for

benefits because the denial was arbitrary and capricious.  He seeks to recover benefits

under the terms of the Plan and to enforce his rights under the Plan.[29]

**1.    Review under Arbitrary and Capricious Standard**

Courts apply an abuse of discretion standard of review when, as in this case, the

insurance plan gives the insurer discretion to determine eligibility for benefits and

construe plan terms.[30]   Under the abuse of discretion standard, "when 'the plan

fiduciary's decision is supported by substantial evidence and is not arbitrary and

capricious, it must prevail.'"[31]   "'Substantial evidence is more than a scintilla, less

than a preponderance, and is such relevant evidence as a reasonable mind might accept

---

[29]    Fourth Amended Complaint [Doc. # 83-1], at 9-11.

[30]    *Sanders v. Unum Life Ins. Co. of Am.*, 553 F.3d 922, 925 (5th Cir. 2008) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

[31]    *Id.* (quoting *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 397 (5th Cir. 2007)).

as adequate to support a conclusion.'"[32] The court is not free to substitute its own judgment in place of the judgment of the plan administrator.[33]

Defendants' denial of Plaintiff's benefits rested on two independent grounds: the "approved medical provider rule" and the "24 hour rule." The Denial Letter stated:

> After reviewing your benefits claim, we have determined that this claim was not reported within 24 hours and must be denied in full.
>
> According to the recorded statement given on January 18, 2008 your injury occurred on December 17, 2007 but that you did not report the injury until December 19, 2008 [sic]. The Plan states that all injuries must be reported within 24 hours from the date in [sic] which it occurred. Furthermore, you stated to have sought medical treatment with Dr. Lugo-Faria who is not considered an Approved Provider. The Plan does not cover medical treatment sought outside the network nor does it cover any lost time incurred due to the treatment plan of the Unapproved Provider.[34]

---

[32] *Burtch v. Hartford Life and Accident Ins. Co.*, 314 F. App'x 750, 754 (5th Cir. 2009) (quoting *Corry*, 499 F.3d at 398)).

[33] *Williams v. Metropolitan Life Ins. Co.*, 609 F.3d 622, 630 (4th Cir. 2010); *Chapman v. Prudential Life Ins. Co. of Am.*, 267 F. Supp. 2d 569, 577 (E.D. La. 2003).

[34] Letter from J. Emerson to P. Gonzales, dated Jan. 28, 2008 (Exhibit C to Motion) ("Denial Letter"). Plaintiff asserts that the Denial Letter is insufficient because the administrator "failed to offer any explanation of its reasoning," as required by 29 U.S.C. § 1133. Response, at 7-8 (citing *Leake v. KrogerTexas, L.P.*, 2006 WL 2842024, *6 (N.D. Tex. 2006)). Plaintiff's argument is meritless. The case cited by Plaintiff holds as follows:

> A court will excuse a failure to comply with the technical requirements
> (continued...)

Defendants argue that substantial evidence supports both grounds for the denial.[35]  As explained below, the Court agrees.

### a.    Approved Medical Provider Rule

---

[34]       (...continued)

>          of § 1133(1) and related regulations if the purposes of § 1133(1) are fulfilled.  The purposes of the § 1133 notice provision are to ensure that a claimant understands the reasons her claim was denied and comprehends her right to review of the decision.  To ensure that the claimant understands the reasons for the claim decision, a plan administrator must articulate the specific reasons for denying the claim, but it need not explain to the claimant the reasoning behind the reasons.

*Leake*, 2006 WL 2842024, at *6 (internal quotation marks and citations omitted).  In the case at bar, the Denial Letter was perfectly clear.  It stated that Plaintiff's claim was being denied because the injury was not reported within 24 hours and because he sought medical treatment from a non-approved provider.   Denial Letter, at 1.

In addition, Plaintiff objects to the Denial Letter as evidence because Defendants failed to provide a return receipt showing the date when plaintiff received a copy of the adverse benefits determination.  Plaintiff's Objections to Defendants' Motion for Summary Judgment Evidence [Doc. # 147], at 4-5.  Because this Court does not rely on the date of Plaintiff's receipt of the Denial Letter for any of its rulings, this objection is **denied as moot**.

Plaintiff further objects to the Denial Letter, and to all exhibits authenticated by affidavits from Justin Emerson, contending the authenticating affidavit is "incomprehensible" and does not individually address each document submitted.  Doc. # 147, at 3.  Defendants' system for authentication (*see* Reply, at 6) is imprecise but comprehensible.  Plaintiff's objections are overruled.  Plaintiff does not dispute that the records are of Defendants' regularly conducted activity, that the documents are authentic, or that the documents were produced to Plaintiff in discovery.  Plaintiff's objections to Emerson's authentication affidavits are **overruled.**

[35]       Plaintiff states, "Defendants have never controverted the facts that plaintiff was injured on the job, that the procedures performed as a result were medically necessary, or that the costs of those procedures were reasonable." Response, at 2.  None of these facts are material to the summary judgment issues before the Court.

Defendants' denial of benefits rested in part on Plaintiff's failure to seek medical care from an approved provider under the Plan.  The Denial Letter cited to an interview of Plaintiff by Justin Emerson, claims examiner for Sedgwick, in which Plaintiff stated that he had received treatment from Dr. Lugo-Faria, a physician with an office "across the street" from the AutoZone store where Plaintiff worked.[36]  Dr. Lugo-Faria is not an approved provider under the Plan.

Plaintiff has not submitted any evidence that he received treatment from an approved provider, nor that he sought such treatment but could not obtain it.[37]  His summary judgment briefing fails to dispute Defendants' evidence on this point. Indeed, Plaintiff's briefing wholly fails to address the approved provider issue in the context of his Section 502(a)(1) claim, and his Fourth Amended Complaint does not include a Section 502(a)(1) claim complaining about denial of benefits on the basis of the approved provider rule.[38]

---

[36]    Recorded Statement of Pete Gonzales (Exhibit Q to Motion) ("Gonzales Recorded Statement"), at AZ 10, 14; Denial Letter.

[37]    Plaintiff submitted to Defendants an "off work" slip from Casa de Amigos Health Center, which stated that he was treated at the clinic on December 17, 2007.  Exhibit G to Motion.  However, Casa de Amigos also is not an approved medical provider under the Plan.

[38]    Fourth Amended Complaint, at 9-11.

Because Defendants have presented substantial evidence supporting their decision to deny benefits to Plaintiff based on non-compliance with the approved provider rule, and because Plaintiff has failed to present any evidence demonstrating a genuine question of material fact on this issue, summary judgment is granted for Defendants.

### b.    24 Hour Rule

As an additional ground, and because the parties have fully briefed the issue, the Court addresses Plaintiff's claim that Defendants' denial based on the 24 hour rule was not supported by substantial evidence.

Plaintiff argues that he complied with the notice requirement, informing his employer of his injury within 24 hours.  Plaintiff points to a handwritten note he wrote, dated December 17, 2007, the day of the incident, which he marked "10:00 a.m." The note states that he slipped and sprained his ankle and lower back, and that he informed his supervisor, Stacey Battle, of the spilled oil.[39]  Plaintiff avers in an

---

[39]    Plaintiff's Handwritten Note, dated Dec. 17, 2007 (Exhibit F to Motion) ("I slipped on some oil today and sprained my ankle and the lower part of my back.  I put oil dry on it and advised my manager Stacey Battle of the problem.").  The note is not addressed to anyone but, at the bottom, states "C.C. File," "C.C. Autozone Corp Office," and "C.C. Dr. if needed."    Elsewhere in the record, however, Gonzales stated that the accident happened later than 10:00 a.m., the time given on the note. *See* Gonzales Recorded Statement (Exhibit Q to Motion), at AZ-7 (when asked what time the incident occurred, Gonzales stated "Oh, I am going to say about 10:30 . . . 11:00 in the morning.").

affidavit that he reported the incident to Battle on December 17, and that he told her

he was injured as a result of the incident.[40]  His affidavit further states that he "left []

with Stacey Battle" his handwritten description of the incident dated December 17.[41]

Plaintiff also refers to his own recorded statement to Emerson on January 18, 2008 in

which he stated that, right after he slipped, he orally notified Battle that "there is some

oil back there" and that he had slipped and hurt himself.[42]

Defendants argue that substantial evidence in the record supports the

administrative decision that Plaintiff did not comply with the 24 hour rule.  The issue

here is not whether there is a genuine fact dispute about Plaintiff's reporting the

incident within 24 hours, but rather whether there is a genuine fact issue that

---

[40]     Affidavit of Pete Gonzales, dated Feb. 6, 2012  (Exhibit B to Response), at 1, ¶ 3.

[41]     *Id*. at 2, ¶ 4.  Plaintiff also stated, in an account that differs from his affidavit, that he
merely placed his handwritten incident report in a file cabinet and mentioned it to a
coworker, Jose Hernandez.  *See id*. at AZ-20 ("Monday [December 17, 2007] I made
out the . . . written statement of what happened. . . . Like an incident report I made it
out . . . put it in the file cabinet and I told Jose [Hernandez] if anybody needs it there
is it man you know what happened.").

[42]     Gonzales Recorded Statement, at AZ-9.  Plaintiff's briefing also cites to allegations
in his Complaint, which alleges that he notified his supervisor "[w]ithin minutes" of
the incident, both verbally and in writing.  Fourth Amended Complaint [Doc. # 83-1],
at 5.  Allegations in a complaint are not summary judgment evidence that can prevent
summary judgment against the Plaintiff.  *See Diamond Offshore*, 302 F.3d at 545
n.13.

Defendants have presented "substantial evidence" supporting the administrative decision.[43]

The record contains evidence that Battle reported on January 3 that she was not notified of Gonzales' injury until January 2, 2008.[44] On January 18, 1008, she spoke with Emerson regarding the incident and reported that "there was an oil spill that [Gonzales] cleaned up" on a date she could not recall; she "firmly" stated to Emerson that Gonzales "did not mention any injury or that he slipped and fell at any time."[45] On January 24, 2008, Emerson spoke to Gonzales' coworker, Jose Hernandez, who

---

[43]     *See Sanders*, 553 F.3d at 925; *Burtch*, 314 F. App'x at 754.

[44]     Written Statement of Stacey Battle, dated Jan. 3, 2008 (Exhibit D to Motion) ("I, Stacey Battle[,] was never notified by Pete Gonzales that he had slipped on some oil and that he sprained his ankle and the lower part of his back.  I received a note on Wednesday the 2nd of January 2008 indicating that Pete had a work related injury.  I researched and discovered that Pete did not report the injury to Sedgwick Claims.  I am filling out an AutoZoners Incident Report and reporting the injury to Sedgwick.  Pete did not seek medical treatment from our designated medical provider.  I have repeatedly [tried] to contact Pete to no avail.").

On January 7, Battle reported to Emerson that Gonzales had been scheduled for vacation the week beginning December 28, 2007, and that he did not speak with anyone regarding the incident or injury.  She states that Gonzales, on January 2, 2008, left a note "on the counter" stating that he could not work until January 15.  Sedgwick Claims File (Exhibit E to Motion), at AZ 453.  Plaintiff apparently did not return to work at the store on January 15, *id*. at AZ 450, or any time thereafter.  *See* Doc. # 148, at 8 (Plaintiff admits that he did not return to work after January 15).

[45]     Sedgwick Claim Notes (Exhibit E to Motion), at AZ 447.  Plaintiff objects to Battle's purported statement as hearsay.  *See* Doc. # 148, at 3.  However, the Court does not rely on Battle's statement for the truth of the matter she asserts, but rather considers the Claim Notes file as evidence of what Emerson and Defendants relied upon when deciding on Plaintiff's application for benefits.  Plaintiff's objection is **overruled**.

reported that Gonzales had told him "he slipped and fell but was ok," and that Hernandez did not recall Gonzales saying that he was going to seek medical treatment.[46]

Plaintiff argues that Defendants' evidence regarding when Plaintiff actually reported the accident is internally inconsistent, and thus cannot suffice as substantial evidence, especially when contradicted by Plaintiff's evidence.  However, as noted, the question before this Court is not the typical summary judgment inquiry into whether Plaintiff has demonstrated a genuine issue of material fact whether he actually reported his injury within 24 hours.  Rather, in this ERISA context, the question is whether there is a genuine issue of fact that "substantial evidence" supports the administrator's decision that Plaintiff did not comply with the rule.[47]

---

[46]   Sedgwick Claim Notes (Exhibit E to Motion), at AZ 445.  Again, Plaintiff objects on hearsay grounds to Hernandez's purported statement, *see* Doc. # 148, at 7, but the Court does not rely on Hernandez's statement for the truth of the matter asserted.

Hernandez reported to Emerson that he could not recall precisely when Gonzales had told him about the incident, but that it was days or weeks after the fact.  Sedgwick Claim Notes, at AZ 445.  This conflicts with Gonzales' interview with Emerson, in which Gonzales stated that he had told Hernandez on December 19 that he had hurt his back and was going to see a doctor.  Gonzales Recorded Statement, at AZ 16.  At another point in his interview, Gonzales stated that he told Hernandez about the incident on December 17, when he put his handwritten note in the file cabinet.  *See id*. at AZ 20.

[47]   *See Sanders*, 553 F.3d at 925; *Burtch*, 314 F. App'x at 754.  "Substantial evidence" is "more than a scintilla" and "less than a preponderance."  *Burtch*, 314 F. App'x at 754.

Based on all the evidence of record, the Court concludes that Plaintiff has not demonstrated a genuine issue of material fact that there is an absence of substantial evidence supporting Defendants' administrative decision to deny Plaintiff benefits because he failed to report the injury within 24 hours. Summary judgment for Defendants therefore is warranted on this ground.[48]

### 2.    Enforceability of Plan Terms

Plaintiff additionally argues, in his briefing addressing his Section 502(a)(1) claim, that the Plan terms are not enforceable against him because he did not receive a copy of the Summary Plan Description ("SPD"), and thus the Plan terms were not disclosed to him, until after he filed this lawsuit. He concedes that the SPD contains the relevant requirements regarding the 24 hour rule and the approved medical provider rule, but argues that Defendants did not comply with statutory requirements for timely provision of the SPD to Plan beneficiaries. He seeks equitable remedies of reformation and estoppel, arguing that "this Court is empowered to estop, excise, or

---

[48]    Defendants additionally argue that summary judgment is warranted on Plaintiff's claim under Section 502(a)(1) because Plaintiff failed to timely appeal the denial of benefits. Motion, at 9-11. Given the holdings above granting summary judgment on separate grounds, the Court need not address Defendants' additional argument.

relax the 24-hour reporting and approved medical provider provisions that defendants claim justify denial of plaintiff's claim for medical benefits under ERISA."[49]

Plaintiff's claim for equitable relief fails.  To the extent he now seeks to assert an equitable relief claim under Section 502(a)(3), he is barred because he agreed to dismiss that claim on June 16, 2011.[50] Plaintiff's agreement was after the Supreme Court decided *CIGNA Corp. v. Amara*,[51] a case upon which he now relies.  In any event, the equitable relief discussed in *Amara* was a remedy for false or misleading information provided by a plan administrator, and thus was based on facts materially different from those alleged by Plaintiff in this case, *i.e.*, the Plan's alleged failure to provide him a copy of an SPD.[52]

---

[49]    Response, at 5-6 (citing *CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011)).  Plaintiff further alleges in his Response, at 5, that Defendants' alleged violations of ERISA's disclosure requirements entitle him to seek civil penalties under Section 502(c), 29 U.S.C. § 1132(c).  This contention is rejected.  Plaintiff has not pleaded a claim under Section 502(c).  *See* Fourth Amended Complaint [Doc. # 83-1].

[50]    *See* Doc. # 112. *See* Memorandum and Order, dated June 16, 2011 [Doc. # 114], at 4 ("Count III seeks injunctive relief under ERISA, 29 U.S.C. § 1132(a)(3)(A). Plaintiff's response unequivocally states that he does not oppose dismissal of Count III, and he thus abandons this claim.  Count III therefore will be dismissed by agreement.").

[51]    131 S. Ct. 1866 (2011).  The Supreme Court issued the *Amara* decision May 16, 2011.

[52]    *See Amara*, 131 S. Ct. at 1879-80 (discussing reformation and estoppel).

Alternatively, to the extent that Plaintiff seeks equitable relief under Section 502(a)(1)(B), which authorizes an action to enforce the terms of the Plan as written,[53] his claim also fails.  The Supreme Court in *Amara* recently reiterated the scope of that provision:

> Where does § 502(a)(1)(B) grant a court the power to change the terms of the plan as they previously existed?  The statutory language [in § 502(a)(1)(B)] speaks of enforcing the terms of the plan, not of changing them.  The provision allows a court to look outside the plan's written language in deciding what those terms are, i.e., what the language means.  But we have found nothing suggesting that the provision authorizes a court to alter those terms, at least not in present circumstances, where that change, akin to the reform of a contract, seems less like the simple enforcement of a contract as written and more like an equitable remedy.[54]

Plaintiff's challenge to the enforceability of the Plan's terms is unavailing, and Defendants are entitled to summary judgment.

### 3. Conflict of Interest

---

[53]   Under Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

[54]   *Amara*, 131 S.Ct. at 1876-77 (internal citations, quotation marks, and alterations omitted).

Plaintiff argues that summary judgment should be denied on his claim under Section 502(a)(1) because Defendants both administered and funded the Plan, resulting in a conflict of interest.[55]

In *Metropolitan Life Insurance Company v. Glenn*,[56] the Supreme Court held that, for ERISA purposes, a conflict of interest exists when the defendant both evaluates the claim (as administrator of the plan) and pays valid claims (as insurer).[57] The Court in *Glenn* further held that, on judicial review, the conflict of interest "should be weighed as a factor in determining whether there is an abuse of discretion."[58]  A conflict of interest "should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration."[59]   When the circumstances suggest "procedural unreasonableness," they justify giving more weight

---

[55]     Response, at 8.

[56]     *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).

[57]     *Glenn*, 554 U.S. at 114.

[58]     *Id*. at 115 (internal quotation marks and citations omitted). *See Crowell v. CIGNA Group Ins.*, 410 F. App'x 788, 793 (5th Cir. 2011).

[59]     *Id*. at 117.

to the conflict.[60]   However, when the conflict is minimal, such as when an administrator has taken steps to reduce potential bias, it is not an important factor in the Court's analysis.[61]

Plaintiff has not advanced any persuasive argument that the structural conflict in this case warrants a denial of summary judgment.[62]   Plaintiff has failed to present evidence that Defendants' structural conflict actually affected its decision to deny benefits in this case.[63]   In the absence of any such evidence, the Court holds that the

---

[60]   *Id.* at 118.  *See Schexnayder v. Hartford Life and Accident Ins. Co*., 600 F.3d 465, 470-71 (5th Cir. 2010) ("In this case, because the circumstances suggest procedural unreasonableness, we believe that Hartford's financial bias may have played a part in its decision, and therefore the conflict is a more significant factor.").

[61]   *Glenn*, 554 U.S. at 117 (stating that a conflict of interest "should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances").

[62]   Response, at 8 (citing only to Fourth Amended Complaint, at 16-17).  A nonmovant's summary judgment burden cannot be met by mere reliance on his pleadings. *Diamond Offshore*, 302 F.3d at 545 n. 13.

[63]   *See Holland v. International Paper Co.*, 576 F.3d 240, 249 (5th Cir. 2009) (conflict of interest was minimal, partly because the defendant had established a trust to pay benefits and made irrevocable contributions to the trust; furthermore, there was no evidence that the defendant's conflict had actually affected its benefits decision); *Robinson v. Hartford Life and Acc. Ins. Co.*, 2010 WL 3023371, *5 (W.D. La. 2010) (Stagg, J.) ("Robinson has not pointed to any specific evidence of a history of abuses of discretion or of how [the defendant's] structural conflict of interest may have affected its benefits decision in this particular case. Therefore, to the extent that [the defendant's] dual role as both insurer and plan administrator may create a conflict, that conflict is not a significant factor that would justify a change in the standard of review.").

structural conflict was a not a significant factor in the administrative denial of Plaintiff's claim.

### 4.    Regulatory Requirement for Administrative Review

Plaintiff argues that summary judgment is inappropriate because Defendants violated federal regulations requiring that an administrative appeal be "conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal, nor the subordinate of such individual."[64]   Plaintiff conclusorily asserts that he was "denied meaningful review,"[65] but offers no explanation of the assertion's relevance to a claim under Section 502(a)(1), which entitles a participant to enforce his rights under the terms of an ERISA plan.   Plaintiff also does not establish what remedy would be available to him if he proved that the regulation was violated.

In any event, Plaintiff has not presented competent summary judgment evidence that the regulation actually was violated.   Plaintiff claims that Carmen Haskell, AutoZone's Risk Manager and ERISA Plan Claims Administrator, made the initial adverse benefit determination in his case, and that she then was "[p]resent at and

---

[64]    Response, at 8-9.   Plaintiff cites to 29 C.F.R. § 2520.104b-2 as the regulation supporting his argument; however, this regulation does not contain the language he quotes.   Plaintiff apparently meant to cite to 29 C.F.R. § 2560.503-1(h)(3)(ii), which contains the quoted language.

[65]    Response, at 9.

participating in the appeals committee hearing" and was "the person presenting the claim at the appeals committee hearing."[66]  Contrary to Plaintiff's position, the record clearly reveals that the initial adverse determination was made by Justin Emerson, not by Haskell.[67]  Further, Plaintiff has presented no evidence that Haskell "conducted" the appeal of Plaintiff's claim.  Rather, Haskell was present at the appeals meeting as the Claims Administrator.[68]  She accordingly presented the claim and the relevant documents to the Appeals Committee.[69]  As Plaintiff acknowledges in his briefing, committee members Steve Beussink and Nancy Stephens were the only persons who voted on the outcome of Plaintiff's appeal.  Haskell testified at deposition, without contradiction, that when she presented Plaintiff's claim to the appeals committee, she

---

[66]     *Id.*

[67]     Denial Letter (Exhibit C to Motion) (signed by Emerson).  In support of his assertion that Haskell made the initial adverse determination, Plaintiff cites only to an entry in Sedgwick's claim file notes.  In that entry, dated January 23, 2008—five days before Defendants denied Plaintiff's claim—Haskell stated, "I agree" in an email sent to Emerson and others.  Sedgwick Claim Notes (Exhibit E to Response), at AZ 445.  The message contains no other text.  It does not make clear the statement or position with which Haskell is agreeing.  To the extent Plaintiff is asserting that this cryptic message demonstrates that Haskell, rather than Emerson, was the person making the initial determination, Plaintiff's argument lacks merit.  A reference to an ambiguous hearsay statement showing that Haskell participated in a written exchange regarding Plaintiff's claim days before the decision apparently was made does not demonstrate that she personally made the determination.

[68]     Appeals Committee Meeting Minutes, Sept. 2, 2008 (Exhibit C to Response).

[69]     *Id.*

did not recommend what the committee should do.[70]  Plaintiff has not demonstrated a genuine question of material fact that Haskell was the decisionmaker on Plaintiff's claim either at the initial determination or at the appellate level.  His argument that Defendants violated federal regulations regarding a claimant's appeal of an adverse ruling is rejected.

For all of the foregoing reasons, summary judgment is granted for Defendants on Plaintiff's claim under Section 502(a)(1) of ERISA.

## C.   Declaratory Judgment

Plaintiff seeks a judgment under 28 U.S.C. §§ 2201, 2202, declaring that certain provisions in the Plan are unreasonable and unenforceable.  He relies on a general regulatory requirement that ERISA group benefit plans be administered in a reasonable manner.[71]

Plaintiff's Fourth Amended Complaint alleges that six aspects of the Plan are unreasonable.  Defendants' Motion addresses all of Plaintiff's allegations.  However, Plaintiff's Response states that only two aspects of the Plan are now at issue: (1) Article 4.1 regarding 24 hour notice of injury, and (2) Articles 1.1 and 4.2 regarding

---

[70]   Deposition of Carmen Haskell (Exhibit T to Reply), at 54.

[71]   Fourth Amended Complaint [Doc. # 83-1], at 12-15.  *See* 29 C.F.R. § 2560.503-1(b) ("Every employee benefit plan shall establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations . . . .").

approved medical providers.[72]  The Court deems the remaining alleged bases for Plaintiff's declaratory judgment claim abandoned, and addresses the two provisions at issue.

### 1.    24 Hour Rule (Plan Article 4.1)

Plaintiff argues that Article 4.1 of the Plan is unreasonable.  Article 4.1 requires a Plan participant to report every incident or fact that results, or might reasonably be expected to result, in an injury.  Specifically, the Plan provides:

> The Participant . . . must provide verbal notice immediately after being injured at work to his or her Manager On Duty, no matter how minor the injury appears to be.  For injury due to an Accident, or for a known exposure to an Occupational Disease, verbal notice must be provided within 24 hours of the time of the injury.  For an actual injury due to Occupational Disease or Cumulative Trauma, verbal notice must be provided within 24 hours after being medically diagnosed or within 30 days after the Participant should have known of the injury, whichever is earlier.[73]

Article 4.1 further provides that "[n]o benefits will be payable under the Plan if notice is not provided as required above," but includes an exception if "the Claims

---

[72]   Plaintiff's Response, at 12 ("In Count II of his Complaint, plaintiff seeks to have various terms of his ERISA plan declared unreasonable.  At this stage in the litigation, there are two provisions of plaintiff's ERISA Plan that he seeks declared unreasonable . . . (citing Fourth Amended Complaint, at 12-15)).

[73]   Official Plan Document (Exhibit B to Motion), at AZ 244 (Article 4.1(a)).  Plaintiff objects to Defendants' reliance on the Plan document on the ground that Defendants have not offered proof that Plaintiff ever received a copy of the Plan before litigation began. Doc. # 147, at 3-4, ¶ 7.  Plaintiff fails to explain how he could pursue benefits under the Plan, as he does in this lawsuit, without the Plan being considered as evidence.  Plaintiff's evidentiary objection to the Plan is **overruled.**

Administrator determines that good cause exists for failure to give notice in a timely manner."[74]  Plaintiff claims that the 24 hour notice rule is unreasonable "as it is simply too short of a time period to allow for reporting of an injury," is susceptible to "gross unfairness," has been used to deny valid claims, and allows arbitrary and capricious denial of plan benefits.[75]  These arguments are unavailing.

First, Plaintiff asserts elsewhere that he *did* report his injury within 24 hours, by allegedly informing Battle verbally and by handwritten note which he claims to have "left with" her.[76]   To the extent Plaintiff actually reported the injury as he claims, he would have satisfied the Plan's 24 hour notice requirement.  By his own admission, therefore, the shortness of the time period is not unreasonable.

Second, Defendants have presented evidence of Article 4.1's reasonableness.[77] As stated above, Article 4.1(a)(2) provides a "good cause" exception to the 24 hour

---

[74]   *Id*. at AZ 445 (Article 4.1(a)(2)).

[75]   Fourth Amended Complaint [Doc. # 83-1], at 13.  Plaintiff further alleges that the provision is unreasonable because some injuries may not be apparent for over 24 hours and thus cannot be timely reported.  However, this criticism is unfounded because the plain language of the Plan, quoted above, addresses these situations by providing that such an injury be reported within 24 hours of diagnosis or 30 days after the participant should have known of the injury, whichever is sooner.  Plaintiff has not argued that this clause of Article 4.1(a) is properly applied to him.

[76]   Plaintiff's Handwritten Note, dated Dec. 17, 2007 (Exhibit F to Motion); Gonzales Affidavit, at 1-2, ¶¶ 3-4; Gonzales Recorded Statement, at AZ-9.

[77]   29 C.F.R. § 2560.503-1(b)(3) states that claim procedures are "reasonable" if, among other things they "do not contain any provision, and are not administered in a way, that unduly inhibits or hampers the initiation or processing of claims for benefits."

notice requirement.    Article 4.1(a) contains a provision for injuries that cannot be immediately known, requiring that they be reported within 24 hours of medical diagnosis or within 30 days after the participant should have known of the injury, whichever is earlier.[78]   In addition, Defendants have presented the affidavit of Julie Lambeth, Senior Vice President of PartnerSource, the company that authored the Plan for AutoZone.[79]   Lambeth cites multiple legitimate purposes for the 24 hour notice rule, including prompt payment of wage replacement benefits where needed, facilitation of immediate investigation of the workplace, the opportunity to determine promptly whether an unsafe condition exists, and minimization of the possibility that

---

[78]    Article 4.1(a).  *See Garcia v. Best Buy*, 2009 WL 2982788, *8 (S.D. Tex. 2009) (Harmon, J.) (holding that nearly identical 24 hour notice requirement in an ERISA plan did not violate federal regulations proscribing requirements that "inhibit or hamper" claims for benefits).

[79]    Affidavit of Julie Lambeth (Exhibit J to Motion).  Plaintiff objects generally to the Lambeth Affidavit, without objecting to any specific statement contained in it.  *See* Plaintiff's Objections to Defendants' Motion for Summary Judgment Evidence [Doc. # 147], at 6, ¶ 17.  Plaintiff argues that the Lambeth Affidavit contains the same information as was provided in her report, which Defendants produced after Plaintiff had deposed Lambeth and which Plaintiff contends was information about which Lambeth denied knowledge in her deposition.   The Court already considered Plaintiff's objections to Lambeth's report, ruling that she may testify regarding the information in that report.  *See* Hearing Minutes and Order, dated Nov. 30, 2011 [Doc. # 135] (denying Plaintiff's Opposed Motion to Strike Julie Lambeth's Report [Doc. # 130]).  Moreover, the excerpts of Lambeth's deposition provided by Plaintiff, *see* Exhibit 2 to Document # 149, do not support his contention that Lambeth in deposition denied knowledge of the matters she later addressed.  *See also infra* n.86. Plaintiff acknowledges that the information in the affidavit is the same information as in the report.  Plaintiff's objections to the Lambeth Affidavit are **overruled**.

a non-work-related intervening event would exacerbate an injury.[80]   Lambeth also states that the reporting requirement has not been used to deny a substantial number of claims:  2,415 claims have been filed since inception of the Plan and 3.4%, or 83 claims, have been denied for late reporting.[81]

Plaintiff asserts that a genuine question of material fact exists on the issue of the reasonableness of the 24 hour provision, but cites no summary judgment evidence in support of his assertion.[82] He responds to Defendants' argument regarding the 3.4% denial rate by speculating, without citation to the record or any evidence, that "the value of these denied claims *may* constitute a substantial amount of the total dollar value requested under the plan."[83]  This response is conclusory and does not raise a genuine material fact issue to defeat summary judgment.

Plaintiff also asserts that Defendants' other arguments regarding the purposes of the 24 hour rule are "so general that they cannot possibly justify defendants' total forfeiture rule without giving plaintiff the opportunity to cross-examine witnesses and

---

[80]      *Id*. at 2, ¶ 6.

[81]      *Id*. at 2, ¶ 6(j).

[82]      Response, at 12-14.

[83]      *Id*. at 13 (emphasis added).

look at the data on which the defendants' conclusions are based."[84]  This contention is unfounded.  First, as discussed above, the Plan does not have a "total forfeiture" rule, but rather one that allows for good cause exceptions to the requirement of timely notice.[85] Second, Plaintiff previously had the opportunity to question Lambeth at deposition but elected not to delve into this topic despite listing the 24 hour rule prominently in his subpoena notice.[86]  Plaintiff's bare assertion, after discovery has closed, that he "do[es] not have enough information to evaluate the quality of defendants' explanations,"[87] is insufficient to defeat summary judgment.

## 2.    Approved Medical Provider Rule, Articles 1.1 and 4.2

The Plan provides that medical treatment is covered by the Plan only if it is furnished by or under the direction of an "Approved Physician" or "Approved Facility."[88]   An "Approved Physician" is a duly licensed physician "expressly approved by the Claims Administrator, included on an approved list of physicians

---

[84]     *Id*.

[85]     Official Plan Document (Exhibit B to Motion), at AZ 245 (Article 4.1(a)(2)).

[86]     Plaintiff's Fourth Amended Notice of Oral/Video Deposition and Subpoena Duces Tecum of the Designated Representative(s) of PartnerSource, Inc. (Exhibit D to Doc. # 134), at 5.

[87]     Response, at 13.

[88]     Official Plan Document (Exhibit B to Motion), at AZ 219 (Article 1.11(b)).  *See also id*. at AZ 245-46 (Article 4.2).

adopted by the Claims Administrator, or otherwise approved in writing by the Claims Administrator upon the request of a Participant."[89]  Plaintiff claims that the provision requiring beneficiaries to use only approved medical providers, allegedly upon penalty of forfeiture of all Plan benefits, is unreasonable.  He further alleges that the provision is used to arbitrarily and capriciously deny claims for benefits, is susceptible to gross unfairness, and has been used to deny valid claims.[90]

Defendants argue that there is no support for Plaintiff's allegations and no evidence that the approved provider rule is used to deny benefits in an arbitrary and capricious manner, nor that it otherwise inhibits or hampers the initiation or processing of claims, in violation of federal regulations.  In support of the provision's reasonableness, Defendants again rely on Lambeth, who states in her affidavit that AutoZone selects qualified, quality physicians; that physicians are regularly credentialed to ensure that all licenses are in good standing and no board orders or suspensions exist; that protocols are developed and agreed to by physicians to ensure that employees receive proper treatment and are never billed for services rendered; that physicians are prohibited from referring out diagnostic testing and physical therapy to eliminate any potential conflicts of interest; and that AutoZone retains a

---

[89]     *Id*. at AZ 216 (Article 1.5).

[90]     Fourth Amended Complaint, at 13-14.

Medical Director for the Plan to monitor approved physicians and to prevent claims from being lost in the system.[91]

In his briefing opposing summary judgment, Plaintiff cites to no summary judgment evidence.  Instead, Plaintiff asserts that summary judgment is inappropriate because Defendants have introduced "no competent evidence" to establish that the administration of the plan is not unreasonable.[92]  Given Defendants' evidence, recited above, this argument lacks merit.

Summary judgment is granted for Defendants on Plaintiff's declaratory judgment claim.

### D.    Attorneys' Fees

Plaintiff's Fourth Amended Complaint seeks attorneys' fees under 29 U.S.C. § 1132(g), which provides that, in an action by a participant, beneficiary, or fiduciary, "the court in its discretion may allow a reasonable attorney's fee and costs of action

---

[91]    Lambeth Affidavit, at 3-4, ¶ 7.  Defendants also cite to the deposition testimony of Steve Beussink, Assistant Treasurer of AutoZone.  Buessink testified that AutoZone designed a medical network with doctors who are well qualified to treat occupational disease and injury, that the network has very little professional turnover, and that wage replacement benefits are immediately available "from day one" with no waiting period.  Deposition of Steve Beussink (Exhibit P to Motion), at 129-30.

[92]    Response, at 14.

to either party."[93] A fees claimant must show "some degree of success on the merits" before a Court may award fees under Section 1132(g).[94]

Because Plaintiff's claims for relief all have been dismissed and Plaintiff has failed to show "some degree of success" on the merits of his claims, summary judgment is granted in Defendants' favor on the issue of Plaintiff's attorneys' fees.

## IV.   <u>CONCLUSION</u>

For all of the foregoing reasons, it is hereby

**ORDERED** that Defendants' Motion to Dismiss Specific Defendants [Doc. # 140] is **GRANTED**.  It is further

**ORDERED** that Defendants' motion to strike Documents No. 148 and 149 [Doc. # 150] as untimely is **DENIED**.  It is further

**ORDERED** that Defendants may file a memorandum in support of their running motion for sanctions **on or before April 10, 2012**.  It is further

**ORDERED** that Defendants' Motion for Summary Judgment [Doc. # 136] is **GRANTED**.  All of Plaintiff's claims are **DISMISSED with prejudice**.  It is further

**ORDERED** that Plaintiff's objections in Documents # 147, # 148, and # 149 are **OVERRULED in part** as stated herein and otherwise are **MOOT**.  It is further

---

[93]     29 U.S.C. § 1132(g)(1).

[94]     *Hardt v. Reliance Standard Life Ins. Co.*, 130 S. Ct. 2149, 2158 (2010).

**ORDERED** that Defendants' Motion to Exclude Plaintiff's Experts [Doc. # 139] is **DENIED as moot**.

A separate final judgment will issue.

SIGNED at Houston, Texas this 16th day of **March, 2012**.

Nancy F. Atlas
United States District Judge